THE STATE OF NEVADA, UPON THE RELATION OF PATRICK CLINE, PETITIONER, *v.* LLOYD S. PAYNE, AS COUNTY CLERK OF CLARK COUNTY, NEVADA, RESPONDENT.

No. 3254

January 3, 1939.                    86 P. (2d) 26.

128

*Harry H. Austin,* for Petitioner:

*Roger Foley,* District Attorney of Clark County, for Respondent:

**OPINION**

By the Court, HATTON, District Judge:

This is an original proceeding in mandamus to compel respondent to print or cause to be printed the names of James Farndale, Patrick Cline, and V. Ray Gubler as candidates for the office of assemblyman or member of the assembly of the state legislature of the State of Nevada, upon the ballot to be used in Clark County at the general election to be held therein on the 8th day of November 1938, and to certify the names of the said parties to the secretary of state as candidates for the said office of assemblyman at said general election.

Thirteen Democrats and one Republican filed for the Assembly in Clark County. The county is entitled to four assemblymen. The county clerk, respondent above named, issued certificates of nomination to the four Democratic candidates who received the highest number of votes at the primary. The above - named Farndale, Cline and Gubler were the three Democratic candidates who received the next highest number of votes. The county clerk also issued a certificate of nomination to the one Republican candidate for the assembly whose name appeared on the primary ballot of that party. No independent candidate filed. The question to be decided is, how many Democratic candidates should go on the ballot for the general election in November? The solution of this question involves the application of the provisions of section 22 of the primary election law, approved March 23, 1917, c. 155, as amended (section 2425 N. C. L. 1929), which now reads as follows: "The party candidate who receives the highest vote at the primary shall be declared to be the nominee of his party for the November election. In the case of an office to which two or more candidates are to be elected at the November election, those party candidates equal in number to positions to be filled who receive the highest number of votes at the primary shall be declared the nominees of their party; *provided,* that if only one party shall have candidates for an office or offices for which there is no independent candidate, then the candidates of such party who received the highest number of votes at such primary (not to exceed in number twice the number to be elected to such office or offices at the general election) shall be declared the nominees of said office or offices; *provided further,* that where only two candidates have filed for a partisan nomination for any office on only one party ticket, and no candidates have filed for a partisan nomination on any other party ticket, for the same office, to which office only one person can be elected, the names of such candidates shall

be omitted from all the primary election ballots, and such candidates' names shall be placed on the general election ballots. In the case of a nonpartisan office to which only one person can be elected at the November election, the two candidates receiving the highest number of votes shall be declared to be the nonpartisan nominees; *provided, however,* that where but two candidates have filed for a nonpartisan office, to which only one person can be elected, the names of such candidates shall be declared to be the non-partisan nominees for such office. In the case of a nonpartisan office to which two or more persons may be elected at the November election, those candidates equal in number to twice the number of positions to be filled who receive the highest number of votes shall be declared to be the nonpartisan nominees for such office. As amended, Stats. 1923, 49, 51; 1925, 258; 1927, 325; 1933, 82."

The petitioner takes the position that the names of the seven Democratic candidates who received the highest number of votes at the primary should be placed on the general election ballot. If the first part of the second sentence of the section above set forth governs this situation, it is clear that only the four Democratic candidates who received the highest number of votes at the primary election are entitled to have their names printed on the general election ballot as nominees of the Democratic party. But petitioner contends that the situation is governed by the first proviso of the section. We have concluded that the proviso referred to does not govern in the present case, for the reasons now set forth. "The words 'office' and 'officer' are terms of vague and variable import, the meaning of which necessarily varies with the connection in which they are used, and, to determine it correctly in a particular instance, regard must be had to the intention of the statute and the subject-matter in reference to which the terms are used." Mootz v. Belyea, 60 N. D. 741, 236 N. W. 358, 359, 75 A. L. R. 1347.

■ What does the word "office" mean in section 2425? The wording of the section itself throws light on this question. In the first part of the second sentence of the section, we find the words, *"an office* to which two or more candidates are to be elected at the November election." In the first part of the last sentence of said section, we find these words, *"a* nonpartisan *office* to which two or more persons may be elected at the November election." The foregoing expressions strongly indicate that the legislators themselves intended the office of assemblyman to be regarded as one office within the meaning of section 2425, regardless of the number of assemblymen to be elected from the various counties in the general election. In this view of the matter, the Clark County situation was not one where only one party had candidates for the office of assemblyman.

The first part of the second sentence of section 2425 reads, "In the case of an office to which two or more candidates are to be elected at the November election, those party candidates equal in number to *positions* to be filled," etc. In the first proviso of the section referred to, the expression "office or offices" occurs twice. In this expression, is the word "offices" used simply to imply two or more separate offices, or does the word also connote the separate *positions* in one office, as in the office of assemblyman? We take the former view—that the office or offices referred to may, in any instance, have only one position to be filled, or there may be several positions, as in the office of assemblyman. The first proviso applies to an office only when but one party shall have a candidate or candidates for such office, and there is no independent candidate. If a party has a candidate for one position in an office, it has a candidate for that office.

The language of the proviso is perfectly clear in a situation where only one party has any candidates at all for the office of assemblyman, and there is no independent candidate. But we encounter difficulties if we

attempt to apply the first proviso to a situation such as is presented in the instant case; for, if the situation be regarded as one where there are four separate offices, then it would seem that the Republican candidate could be the Republican nominee for only one of them. He could not be the Republican nominee for four separate offices. If the Republican nominee is to be deemed the nominee of his party for one of the four separate offices, then how could it be determined who his opponent for that one of the four separate offices would be? As a matter of fact, each candidate is a candidate to represent all of Clark County. If the county were divided into four districts so that a candidate would be required to run for one district only, then there would be a better reason for considering the office as four separate offices instead of one office to which four candidates are to be elected in November.

For the reasons given, it is hereby ordered that the demurrer to the petition be, and the same hereby is, sustained, the alternative writ of mandate dismissed, and the peremptory writ of mandate denied, with costs to respondent.

NOTE—DUCKER, J., having disqualified himself, the Governor designated HON. WM. D. HATTON, Judge of the Fifth Judicial District, to sit in his stead.